**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 18-20743-CR-RUIZ/TORRES

UNITED STATES OF AMERICA,

      Plaintiff,

v.

EMMANUEL JACKSON AND
TARRESSE LEONARD,

      Defendants.

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Tarresse Leonard's ("Leonard") motion to suppress [D.E. 59] physical evidence, including a firearm, ammunition, and eight grams of cocaine protected under the Fourth Amendment of the United States Constitution. An evidentiary hearing was held on April 23, 2019 and Leonard's motion is now ripe for disposition.[1] Having carefully considered Leonard's motion, the Government's response in opposition, the testimony of the witnesses, the oral arguments of counsel, and being fully advised in the premises, the Court recommends that Leonard's motion be **DENIED** for the reasons set forth below.

---

[1]   On March 5, 2019, Judge Scola referred Leonard's motion to the undersigned Magistrate Judge for disposition. [D.E. 39]. Although this case was subsequently transferred to Judge Ruiz on May 6, 2019 for all further proceedings, the undersigned retains jurisdiction to enter a Report and Recommendation on the motion to suppress.

1

## I.      BACKGROUND

On May 18, 2018, Detective Stanley Paul-Noel ("Detective Paul-Noel") of the Miami Police Department was conducting surveillance in an unmarked vehicle for an unrelated narcotics investigation near the corner of Southwest 37th Avenue and Florida Avenue.   While doing so, he observed Emanuel Jackson ("Jackson") walking with a firearm in his hand towards a small crowd of individuals who had gathered near the southeast corner of 37th Avenue and Florida Avenue.   As Jackson approached the crowd, Detective Paul-Noel claims that Jackson raised the firearm and pointed it in the direction of individuals standing on the corner.   As the crowd began to disperse, Jackson placed the firearm in his waistband, took off his shirt, and walked towards 3675 Florida Avenue, Miami, Florida (the "Residence").   Tarresse Leonard ("Leonard") and another individual accompanied him.

As a precautionary measure, Detective Paul-Noel did not immediately intervene.   Instead, Detective Paul-Noel called for reinforcements and Detective Adrian Valle ("Detective Valle") arrived on the scene within sixty seconds.   The two detectives then followed Jackson to place him under arrest.   The detectives verbally identified themselves and shouted commands for the three men to stop.   When Jackson noticed the detectives, he ran towards the Residence and Mr. Leonard tossed a large freezer bag of marijuana on the ground.   Afterwards, the three men ran into the Residence.

2

The detectives chased the three men into the Residence.   They apprehended Jackson in the living room and immediately placed him under arrest.   A few moments later, Officer Yader Somarriba ("Officer Somarriba") arrived on the scene and conducted a pat-down search of Jackson's person.   Officer Somarriba recovered a black 9mm handgun from Jackson's waistband.   Officer Somarriba also found a plastic bag of heroin and a yellow-tinted baggie containing pieces of Xanax bars in Jackson's front right pocket.   While taking Jackson into custody, Detective Paul-Noel noticed a clear plastic bag containing crack cocaine in the living room in plain view.   Meanwhile, Mr. Leonard ran to the east bedroom of the Residence.[2] The officers directed Mr. Leonard to come out of the bedroom and, when he complied, law enforcement placed him under arrest.   Leonard alleges that Jackson admitted to law enforcement that he owned the drugs on the sofa in the living room of the Residence.

After taking the three men into custody, Detective Paul-Noel interviewed Jackson and Leonard.   During the interview, Jackson admitted that he was in possession of drugs and a firearm.   Law enforcement then applied for and obtained a state search warrant.   In the execution of the warrant, law enforcement recovered a loaded pistol, baggies of cocaine, and crack cocaine in the child's bedroom.   Officers located the gun and ammunition under a mattress and the cocaine/cocaine base behind a dresser.

---

[2]     The room that Mr. Leonard ran into is a child's bedroom.

On September 13, 2018, a federal grand jury indicted the three men and charged each of them as a felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Section 922(g) and possession with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1). Jackson and Leonard were also charged with brandishing a firearm in furtherance of a drug trafficking crime and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

## II.      ANALYSIS

Leonard's motion seeks to suppress a firearm, ammunition, cocaine, and a cocaine base found pursuant to a search warrant that law enforcement obtained on May 18, 2018 at the Residence. Leonard argues that the Court should suppress the evidence seized during the search of the Residence because the officers (1) entered the Residence and conducted a warrantless search of the premises without probable cause or exigent circumstances, and (2) omitted key facts from an affidavit used to obtain a search warrant for another search of the premises. We discuss Leonard's arguments in turn.

### A.      ***Whether Leonard has Standing***

Leonard claims that the detectives unlawfully entered the Residence without a warrant and that any evidence recovered must be suppressed as a violation of the Fourth Amendment. Before we consider the merits of Leonard's motion to

4

suppress, we must determine in the first instance whether Leonard has standing to assert a Fourth Amendment violation.

The Fourth Amendment guarantees that people shall "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  The Amendment applies "without regard to whether the government actor is investigating crime or performing another function," including acting as an employer.  *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 756 (2010). "The Fourth Amendment's prohibition against unreasonable searches and seizures protects an individual in those places where [he] can demonstrate a reasonable expectation of privacy against government intrusion."  *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007) (quotation marks omitted).  In other words, the "capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the *invaded place." Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citation, internal quotation marks, and ellipses omitted).  Accordingly, a defendant has standing to challenge a search and seizure only if he "had a legitimate expectation of privacy in the property when it was searched." *United States v. Gibson*, 708 F.3d 1256, 1276 (11th Cir. 2013) (citation and internal quotation marks omitted).

Warrantless searches and seizures inside a person's home are presumptively unreasonable.  *See United States v. Franklin*, 694 F.3d 1, 7 (11th Cir. 2012).  The

curtilage of a home, "the private property immediately adjacent to a home, is entitled to the same protection against unreasonable search and seizure as the home itself." *United States v. Noriega*, 676 F.3d 1252, 1262 (11th Cir. 2012) (citation, internal quotation marks, and alterations omitted).  The Supreme Court has defined the curtilage as the area around the home that harbors those intimate activities associated with domestic life and the privacies of the home.  *See United States v. Dunn*, 480 U.S. 294, 300 (1987).  This means that "[w]henever government agents enter into the curtilage they necessarily intrude upon the individual's reasonable expectation of privacy." *United States v. Jackson*, 588 F.2d 1046, 1053 (5th Cir. 1979).

"In order to have standing to seek suppression of evidence, a defendant must establish both a subjective expectation of privacy in the place searched as well as the objective reasonableness of that expectation."  *United States v. Maxi*, 886 F.3d 1318, 1325 (11th Cir. 2018) (citing *United States v. Robinson*, 62 F.3d 1325, 1328 (11th Cir. 1995)).  "[W]here the premises searched is the dwelling or is owned or rented by, or is in the possession of the accused, he has standing to attack the search." *United States v. Bachner*, 706 F.2d 1121, 1126 n.6 (11th Cir. 1983) (quoting *State v. Leveson*, 151 So. 2d 283, 285 (Fla. 1963)).  However, in some circumstances, "a person may have a legitimate expectation of privacy in the house of someone else." *Carter*, 525 U.S. at 89.  For example, "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the

consent of the householder may not." *Id.* at 90 (explaining that the Fourth Amendment extends to overnight guests because "hold [ing] that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the every day expectations of privacy we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society").

"A defendant also may establish standing by demonstrating an unrestricted right of occupancy or custody and control of the premises searched; ownership is not required, but mere presence or even possession of a key is insufficient." *United States v. Merricks,* 572 F. App'x 753, 757 (11th Cir. 2014) (quoting *United States v. Sarda–Villa*, 760 F.2d 1232, 1236 (11th Cir. 1985)). Ultimately, a defendant bears the burden of proving a legitimate expectation of privacy in an area searched; if an individual fails to do so, the defendant cannot challenge the search. *See Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978); *see also Presley v. United States*, 895 F.3d 1284, 1290 (11th Cir. 2018) ("[S]tanding under the Fourth Amendment is not jurisdictional; instead, we analyze it as a merits issue.").

Here, there is no dispute that Leonard did not own the Residence in question.[3] Leonard claims, however, that he had a reasonable expectation of privacy because (1) he was a houseguest at the Residence for several days a week, (2) he had personal belongings at the home with the consent of the tenant, (3) he lived at the Residence

---

[3]    A lady with the initials E.C. rents the Residence and lives there with her minor children.

intermittently from February 2017 to April 2018, (4) he washed cars in the yard of the Residence, (5) he was in an ongoing relationship with the tenant (6) he visited his children every day after work, (7) he kept clothes at the Residence, (8) he had a key to the home, and (9) he possessed the authority to invite or exclude others.

Unlike Jackson, Leonard has a far stronger argument that he possesses a reasonable expectation of privacy in the Residence.   For example, in *United States v. Merricks*, the defendant argued that officers were prohibited from entering a residence because – although he did not own or lease the home in question – he visited the home daily, occasionally used one of the bedrooms, possessed a key to the house, and stayed overnight three weeks prior to his arrest.   572 F. App'x at 757. The Eleventh Circuit concluded, however, that Merricks lacked a reasonable expectation of privacy because he (1) was not an overnight guest, (2) had not stayed overnight at the home for at least three weeks prior to his arrest, (3) had no unrestricted right of custody or control over the residence, (4) did not keep clothes at that location, and (5) did not receive mail there or pay rent.   *See id*.

When compared to the facts of this case, Leonard meets many of the factors that the Eleventh Circuit considered in *Merricks* because Leonard visited the home daily, kept clothes in the rooms, owned a key, paid rent, and lived at the Residence intermittently for more than a year.   *See also Maxi*, 886 F.3d at 1326 (finding that a guest had a reasonable expectation of privacy because he "paid rent, had a key, and had been living at the duplex intermittently for three to six months.   He also kept

important papers there."). Given the facts presented, Leonard was more than just an overnight guest – he was effectively a subtenant and entitled to a reasonable expectation of privacy. Accordingly, Leonard had a reasonable expectation of privacy in the Residence and has standing to challenge the officers' entry onto the property.

### B. *Whether Law Enforcement had Probable Cause to Enter the Residence*

Having established that Leonard has standing, he argues that Jackson's brandishing of a firearm and his possession of marijuana did not give officers probable cause or reasonable suspicion to enter the Residence. More specifically, Leonard claims that the officers only observed him committing a nonviolent *misdemeanor* because Florida law punishes a defendant in possession of less than 20 grams of marijuana with a citation – not a felony. And given the small amount of marijuana that he discarded, Leonard posits that the officers were prohibited from entering the Residence to conduct a warrantless search. *See, e.g.*, *State v. Markus*, 211 So. 3d 894, 909 (Fla. 2017) ("Florida courts have . . . found probable cause for minor offenses insufficient to justify warrantless home searches and arrests.") (citing *M.J.R. v. State*, 715 So. 2d 1103, 1104 (Fla. 5th DCA 1998) ("The underlying offenses for which M.J.R. could have been, and was, arrested are only misdemeanors, and there is no authority given to a police officer to enter a suspect's home to effect a warrantless arrest for a misdemeanor."); *Conner v. State*, 641 So. 2d 143, 144 (Fla. 4th DCA 1994) ("Applying *Welsh*, we do not believe that the misdemeanor of resisting

arrest without violence or even the 'battery' [that defendant committed in pushing and slapping another person] constituted serious enough offenses to uphold the warrantless entry into defendant's home for what were then two minor misdemeanors.")).   Because Leonard possessed less than 20 grams of marijuana and this constitutes nothing more than a citation offense, Leonard concludes that the officers lacked probable cause to enter the Residence and that anything found in the home must be suppressed.

It is well established that, because of concerns for public safety and the expeditious apprehension of criminals, law enforcement with reasonable cause to believe that an individual has engaged in a crime may arrest without a warrant. *Carroll v. United States*, 267 U.S. 132, 156–57 (1925).   Probable cause exists where the facts and totality of the circumstances, as collectively known to the law enforcement officers and based on reasonably trustworthy information, are "sufficient to cause a person of reasonably caution to believe an offense has been or is being committed."   *United States v. Jimenez*, 780 F.2d 975, 978 (11th Cir. 1986) (quotation marks and citation omitted).   "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."   *Dist. Of Columbia v. Wesby,* 138 S. Ct. 577, 586 (2018) (quotations and citation omitted). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual

showing of such activity. Probable cause is not a high bar." *Id.* (quotations and citations omitted).

We first consider Leonard's argument that Jackson's brandishing of a firearm did not provide the officers with probable cause.   Detective Paul-Noel observed Jackson walking towards a crowd and pointing a firearm at members of the public. Detective Paul-Noel's observations equate to a belief that Jackson committed aggravated assault, which Florida law defines as "an assault: (a) [w]ith a deadly weapon without intent to kill; or (b) [w]ith an intent to commit a felony."   Fla. Stat. § 784.021 (2000).   The statute further provides that "[w]hoever commits an aggravated assault shall be guilty of a felony of the third degree . . . ."   *Id.*   Leonard argues indirectly that Detective Paul-Noel was mistaken in his observations in the first instance because surveillance footage fails to show a firearm pointed at the public.

Leonard's argument is misplaced because, even if the video footage is unclear as to whether Jackson pointed a firearm, Detective Paul-Noel testified credibly that he saw Jackson commit a felony – not just a misdemeanor – and endanger the lives of others.   Detective Paul-Noel's actions after his observation are also consistent with his belief that he saw Jackson point a firearm because Detective Paul-Noel immediately requested backup from law enforcement.   He did not immediately approach the suspect before backup arrived.   In the meantime, he radioed in his description of Jackson, at the same time as he put on his armored vest to protect

himself.   The Court heard the radio communications that followed, all of which supported Detective Paul-Noel's version of the events.   The record evidence submitted and the Detective's credible testimony all show that, from the standpoint of an objective reasonable police officer, probable cause existed to arrest Jackson (or at minimum seizure of the suspect under *Terry* to investigate further).

Leonard then contends that the officers lacked probable cause or reasonable suspicion to seize him despite his failure to follow law enforcement's instructions to stop running.   Under the Supreme Court's landmark decision in *Terry v. Ohio*, "law enforcement officers may seize a suspect for a brief, investigatory . . . stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'"   *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011) (quoting *Terry v. Ohio*, 392 U.S. 19-20 (1968)).   "While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop."   *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (internal quotation marks omitted).   While reasonable suspicion need not involve the observation of illegal conduct, it does require "more than just a hunch."   *United States v. Lee*, 68 F.3d 1267, 1271 (11th Cir. 1995) (citing *United States v. Sokolow*, 490 U.S. 1, 7–8 (1989)).

Considering these principles, Leonard suggests that the officers lacked reasonable suspicion to seize him because mere presence in an area of criminal activity (i.e. where Jackson brandished a gun), standing alone, is not enough to conclude that criminal activity was afoot.   Leonard's argument is misplaced, however, because there were other factors to give the officers reasonable suspicion – namely Leonard's decision to flee with Jackson when the officers directed the individuals to stop running.   And while Leonard's "decision to flee does not *per se* give reasonable suspicion, the [o]fficers had reasonable suspicion as they approached him and before he fled."   *United States v. Johnson*, 2015 WL 5542453, at *5 (M.D. Fla. Sept. 18, 2015).   In other words, "the officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation."   *Wardlow*, 528 U.S. at 124; *see also United States v. Gordon*, 231 F.3d 750, 755–56 (11th Cir. 2010) (noting an area's reputation for criminal activity is a factor that may be considered when determining whether reasonable suspicion exists).

The officers' reasonable suspicion then established probable cause because, while in pursuit, Leonard discarded a bag of marijuana.   Leonard argues (1) that he was in possession of less than 20 grams of marijuana, (2) that the officers should have known that this amount constituted a misdemeanor, and that (3) the officers' mistake vitiates probable cause.   Leonard's argument is unpersuasive because there is no requirement for law enforcement to weigh the illegal substance during a pursuit

to determine if it constitutes a misdemeanor or a felony.   If that was the prevailing rule, law enforcement would never apprehend any suspect because the latter could simply flee the police, discard illegal drugs, and argue that the officers failed to weigh the amount to determine conclusively whether it constituted a serious crime.

Not to be deterred, however, Leonard suggests that Detective Paul-Noel was ultimately mistaken, and that probable cause cannot exist because it was later established that Leonard was in possession of less than 20 grams of marijuana. Even if the officers were mistaken, this does not vitiate probable cause at the time the officers gave chase because while probable cause requires more than mere suspicion, it "does not require convincing proof." *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1119 (11th Cir. 1992).   Indeed, "[t]he Constitution does not guarantee that only the guilty will be arrested.   If it did, [any mistaken arrest] would provide a cause of action for every defendant acquitted." *Baker v. McCollan*, 443 U.S. 137, 145 (1979).   This means that probable cause does not require the same "standard of conclusiveness and probability as the facts necessary to support a conviction." *United States v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003) (quoting *Wood v. Kesler*, 323 F.3d 872, 873 (11th Cir. 2003)).   It merely requires "a reasonable belief that a suspect had committed or was committing a crime." *United States v. Gordon*, 231 F.3d 750, 758 (11th Cir. 2000) (quoting *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992)).   And if an officer makes an arrest "based on a mistake of fact, the only question is whether his mistake of fact

was reasonable," as "[g]reat deference is given to the judgment of trained law enforcement officers 'on the scene.'" *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003) (citation omitted).

Detective Paul-Noel testified credibly that he observed Jackson committing a felony, acted in a manner consistent with that observation, and ultimately recovered a firearm on Jackson's person.   The officers also had reasonable suspicion (and later probable cause) to seize Leonard because he fled law enforcement after being directed to stop and discarded a bag of marijuana in the process.   This means that – irrespective of whether the officers were mistaken or not as to whether Jackson pointed a firearm at individuals or Leonard possessed a quantity of marijuana greater than 20 grams – the officers had probable cause to arrest both individuals as any mistake committed was reasonable given the facts presented.   *See i*d. at 1277 ("An officer's mistaken assessment of facts need not render his actions unreasonable because what is reasonable will be completely dependent on the specific and usually unique circumstances presented by each case.").

Indeed, the officers had *overwhelming* probable cause when compared to an officer in a recent Eleventh Circuit case, who arrested a suspect for possession of burglary tools, even though no burglary was in process at the time and the suspect was found with only a pry bar, sledgehammer and powered saw in his car when detained.   *United States v. Becker,* 2019 WL 689799, at *2 (11th Cir. Feb. 19, 2019). Yet the Court of Appeals affirmed the denial of the motion to suppress because the

15

officer had a factual basis to infer that there was a substantial chance that the suspect (who had a relevant criminal history) intended to or was in the process of committing a burglary using those tools. *Id*. As the panel opinion explained, "[o]fficers can infer that a defendant possessed the requisite mens rea giving rise to probable cause where that inference is reasonable under the totality of the circumstances." *Id.* (citing *District of Columbia v. Wesby,* 138 S. Ct. at 586).

By that measure, this is an open and shut case. Detective Paul-Noel, who was well-positioned to observe what he testified to based on the video surveillance in the record, saw what to him appeared to be a gun in Jackson's hand as he confronted people standing near a grocery store. The gun appeared to be pointing at those people for a moment. That personal observation amply supported his conclusion that the suspect committed either a felony or a misdemeanor. Detective Paul-Noel then observed Leonard flee with Jackson and drop a bag of an illegal substance. The actions of both Jackson and Leonard are the textbook definition of what "probable cause" means. *See, e.g., Virginia v. Moore,* 553 U.S. 164, 176 (2008) ("[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution.").

### C.   *Whether Exigent Circumstances Existed*

The next inquiry is whether there were any exigent circumstances to allow law enforcement to enter the Residence. *See United States v. Burgos*, 720 F.2d 1520, 1525 (11th Cir. 1983) ("A warrantless entry . . . must be justified not only by probable

cause but also by exigent circumstances.") (citing *United States v. Blasco,* 702 F.2d 1315, 1325 (11th Cir. 1983)).   Law enforcement is prohibited under the Fourth Amendment from making a warrantless arrest and nonconsensual entry into a suspect's home to make a routine felony arrest.   *See Payton v. New York*, 445 U.S. 573, 588–90 (1980).   An arrest may be made, however, if the officer has probable cause to believe that the suspect has committed an offense and where exigent circumstances exist which make obtaining a warrant imprudent.   *Id*. at 589.   The Government bears the burden of proving an exception to the warrant requirement. *See United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002).

The exigent circumstances exception recognizes that a "warrantless entry by criminal law enforcement officials may be legal when there is compelling need for official action and no time to secure a warrant."   *Michigan v. Tyler*, 436 U.S. 499, 509 (1978).   "The exception encompasses several common situations where resort to a magistrate for a search warrant is not feasible or advisable, including: danger of flight or escape, loss or destruction of evidence, risk of harm to the public or the police, mobility of a vehicle, and hot pursuit."   *United States v. Holloway*, 290 F.3d 1331, 1334 (11th Cir. 2002) (citing *Johnson v. United States*, 333 U.S. 10, 14-15 (1948) (listing situations falling within exigent circumstances exception); *see also United States v. Reid*, 69 F.3d 1109, 1113-14 (11th Cir. 1995) (upholding warrantless search of residence based on exigent circumstances arising from risk of losing evidence, risk of flight, and danger of harm to public or officers); *United States v.*

17

*Forker*, 928 F.2d 365, 368-69 (11th Cir. 1991) (upholding warrantless search of vehicle based on mobility); *United States v. Tobin*, 923 F.2d 1506, 1510-11 (11th Cir. 1991) (upholding warrantless search of residence based on danger narcotics would be destroyed or removed); *United States v. Burgos*, 720 F.2d 1520, 1525-26 (11th Cir. 1983) (upholding warrantless search of residence based on threat of injury to neighborhood arising from defendant's stash of weapons); *United States v. Blasco*, 702 F.2d 1315, 1326 (11th Cir. 1983) (upholding warrantless search based on imminent danger of flight or escape); *United States v. Kreimes*, 649 F.2d 1185, 1192 (5th Cir. 1981) (upholding warrantless search based on hot pursuit and danger posited by possibility of armed fugitive remaining at large)).

"Factors that indicate exigent circumstances include: (1) the gravity or violent nature of the offense with which the suspect is to be charged, (2) a reasonable belief that the suspect is armed, (3) probable cause to believe that the suspect committed the crime, (4) strong reason to believe that the suspect is in the premises being entered, (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or (6) jeopardize the safety of officers or the public." *United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir. 1987) (alterations included) (citations omitted).   If no exigent circumstances exist, evidence obtained because of an unlawful search in a residence is subject to exclusion.   *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963).

There are at least two exigent circumstances that allowed law enforcement to enter and search the Residence without a warrant. The first is the hot pursuit doctrine. Under the hot pursuit doctrine, police officers may enter a home without a warrant when they are in hot pursuit of a fleeing suspect. *See United States v. Santana*, 427 U.S. 38, 42–43 (1976). A "hot pursuit means some sort of chase, but it need not be an extended hue and cry 'in and about [the] public streets.'" *Id.* at 42–43. This means that even if "the pursuit ended almost as soon as it began, it can nonetheless be characterized as 'hot pursuit.'" *United States v. Ramos*, 933 F.2d 968, 972 (11th Cir. 1991). The Supreme Court has indicated that a claim of hot pursuit is "unconvincing" where there was "no immediate and continuous pursuit of the petitioner from the scene of a crime." *Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984).

The hot pursuit doctrine applies because the officers identified themselves, directed Jackson to stop, and Jackson and Leonard fled toward the Residence. The officers then gave chase. The appropriate inquiry with respect to the hot pursuit doctrine is "whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 548 (6th Cir. 2003) (quotation marks omitted). And to that end, it is objectively reasonable for an officer to believe that he is engaged in a hot pursuit (even if Jackson and Leonard believed otherwise) when he verbally announces himself, shouts commands for a

suspect to stop, and the suspect continues to flee anyway.   Accordingly, the hot pursuit doctrines applies and the officer's entry into the Residence was lawful.

Another exigent circumstance that applies is the risk of harm to the public. Minutes before Jackson and Leonard fled into the Residence, Detective Paul-Noel observed Jackson point a firearm at a crowd of people and flee with Leonard (while discarding marijuana) into the Residence after law enforcement directed the men to stop.   Given these facts, it was reasonable for law enforcement to believe that any persons inside the home could be in danger because of Jackson's prior use of a firearm, the decision to flee, and Leonard's choice to discard marijuana.   Detective Paul-Noel testified credibly that he believed the conduct evidenced a threat to the occupants of the house.   That belief was fully justified based on what the officer knew at the time.

Leonard suggests, on the other hand, that there was no risk of harm because he did not commit a serious offense with the possession of less than 20 grams of marijuana.   But, Leonard's argument is feeble for two reasons.   First, the officers observed Leonard getting rid of an illegal substance and therefore had probable cause to arrest him based on their perception of what they saw him discard.   Second, the determination that Leonard had less than 20 grams of marijuana in his possession is unpersuasive because it does not vitiate the probable cause determination at the time the detectives arrested him.   This means that "[w]hen an officer makes an arrest, which is properly supported by probable cause," the

subsequent charge does not vitiate the arrest. *See United States v. Saunders*, 476 F.2d 5, 7 (5th Cir. 1973). So, when Detective Paul-Noel observed Leonard flee with Jackson and discard a bag of marijuana, the officers were justified in detaining Leonard both before and after he fled inside the Residence. Accordingly, law enforcement had probable cause to arrest Leonard and to enter the Residence to apprehend a suspect that posed a danger to the public.

### D. *Whether the Officers had Probable Cause for a Search Warrant*

Leonard's final argument is that, after the officers entered the Residence and observed cocaine on the sofa where Jackson was arrested, the officers had no probable cause to apply for a search warrant as to the other parts of the Residence. Leonard claims that when Jackson was arrested, law enforcement located a firearm on Jackson's person and Jackson admitted that the cocaine belonged to him. Leonard also speculates that law enforcement must have known that the drugs belonged to Jackson and the area where he was arrested because law enforcement apprehended Jackson soon after he entered the Residence. To that end, Leonard argues that the affidavit was "bare bones," because it failed to (1) mention Leonard, (2) describe Leonard's criminal activity in the Residence, (3) present facts evidencing criminal activity in the home, or (4) include surveillance of the Residence showing criminal activity. Therefore, Leonard concludes that Jackson's statement with respect to the ownership of the drugs and the firearm eviscerates probable cause to search the rest of the Residence.

"Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999) (citing *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991)). An affidavit in request for a search warrant "should establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). Ultimately, the Eleventh Circuit affords "great deference to a lower court's determination that the totality of the circumstances supported a finding of probable cause." *United States v. Steiger*, 318 F.3d 1039, 1046 (11th Cir. 2003) (internal quotation marks omitted).

The affidavit to the search warrant carefully lays out the facts that led to Jackson's arrest and the recovery of cocaine. Specifically, the affidavit provides that law enforcement observed a clear plastic bag containing multiple pieces of loose rock cocaine on the sofa and that a protective sweep was conducted until a search warrant was obtained. Leonard claims that there was no need for a search warrant because Jackson admitted that the cocaine belonged to him and law enforcement had no probable cause to believe drugs were located elsewhere in the Residence.

Leonard's argument fails because even if law enforcement suspected that the drugs belonged exclusively to Jackson, they were under no obligation to find his unsworn statement credible. And even if the officers found Jackson credible,

22

Jackson could have concealed drugs in other parts of the Residence. To that end, the cocaine on the sofa was recovered in plain view – meaning it could have belonged to Jackson, the tenant, Leonard, or any other guest to the Residence. This means that, even if law enforcement suspected that the drugs were the ownership of Jackson, there was no conclusive proof to support that view nor any limitation that restricted the officers' probable cause to that portion of the Residence.[4] As such, the officers had probable cause to apply for a search warrant because the drugs were discovered in plain view and other illegal substances could have been located in other parts of the Residence.

### III.        CONCLUSION & RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that Leonard's motion to suppress [D.E. 59] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the

---

[4]        While Leonard's alleged criminality is not included in the affidavit to the search warrant, Leonard's contention – that law enforcement should have suspected that the drugs belonged exclusively to Jackson – is dubious because immediately prior to entering the Residence, the officers observed Leonard discarding drugs of his own. It is therefore ironic that Leonard claims that the officers should have assumed that the drugs on the sofa belonged solely to Jackson when Leonard was seen immediately prior to his arrest discarding marijuana.

District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 8th day of May, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge